**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3422-24

WILLIAM NOVAK t/a
IMPERIAL SHELL ADDITIONS,

    Plaintiff-Respondent,

v.

GENESIS PAGAN SASTRE,

    Defendant-Appellant.

_____

          Submitted April 30, 2026 – Decided June 5, 2026

          Before Judges Mawla and Marczyk.

          On appeal from the Superior Court of New Jersey, Law Division, Gloucester County, Docket No. L-1071-23.

          Genesis Pagan Sastre, self-represented appellant.

          Sherman Silverstein Kohl Rose & Podolsky, attorneys for respondent (Jeffrey P. Resnick, on the brief).

PER CURIAM

Defendant Genesis Pagan Sastre appeals from the May 27, 2025 judgment in favor of plaintiff William Novak, t/a Imperial Shell Additions, following a bench trial. We affirm.

I.

The following facts are derived from the trial record. In November 2020, defendant's house in Brooklawn caught fire, causing significant damage to the home's interior. Thereafter, defendant hired a public adjuster and submitted a claim to her insurance company, which agreed to cover $220,000 worth of repairs. She then hired plaintiff based on the adjuster's recommendation. Defendant testified she hired plaintiff over other contractors because he indicated he could complete the repairs within three to six months; however, plaintiff denied making that representation.

In February 2021, the parties signed a contract for plaintiff to perform the home repairs for $214,000. The contract defined the scope of work and the specific intervals at which plaintiff would receive partial payments but did not include plaintiff's contractor license number, insurance information, or specify the project's start or end dates. The parties agreed defendant would pay plaintiff as the insurance and mortgage companies released payments to her, following the companies' inspections and approval of plaintiff's work.

A-3422-24

In March 2021, plaintiff began the project. Between September 2021 and August 2022, he received $120,719.80 in partial payments from defendant, following the insurance and mortgage companies' inspections, leaving $93,280.20 due under the contract. Plaintiff provided the court with four checks evidencing those payments. Defendant testified she only inspected plaintiff's work every three to six months and was consistently dissatisfied with it. She introduced eight photographs of plaintiff's work taken during the summer of 2022 and one photograph from the spring of 2023.

In January 2023, plaintiff informed the adjuster and the insurance company he had reached the final stages of his work, so the final insurance payment could be released to defendant. In April 2023, when he returned to perform a few touch-ups, defendant informed him he was fired. Plaintiff estimated the value of his remaining work was no more than $3,000. Defendant acknowledged her insurance company had already released the final payment to her at that time.

Defendant then hired a new contractor, purportedly for $40,000, to fix and complete plaintiff's work, including: reinstalling the bathroom tiles; addressing the smoke damage in the basement; fixing broken pipes; installing sheetrock; completing the installation of the heating and air conditioning; repainting the

house; and fixing the front door. The new contractor testified much of his work involved correcting and completing plaintiff's work, but he admitted he was not a licensed contractor and did not have a formal contracting business.

Defendant claimed she lost $20,000 in insurance money due to plaintiff's failure to complete the project within 180 days and incurred additional rent expenses in addition to her mortgage payments due to plaintiff's delay. However, plaintiff testified defendant never informed him the work needed to be completed within that time frame.

Plaintiff testified he performed additional work beyond the contract's scope for free, including putting in new flooring on the second floor, building a room in the basement for defendant's mother, and installing a beam in the kitchen to "open up the room." He explained the contract did not include start or end dates because the COVID-19 pandemic made it impossible to determine how long the project would take. Plaintiff also recalled drafting an amended contract including the cost of that additional work based on indications defendant's claim amount might be increased to $240,000, but he explained his claims were not based on the amended contract and defendant never signed it.

In September 2023, plaintiff sued defendant for breach of contract, breach of the implied covenant of good faith and fair dealing, and unjust enrichment,

4

alleging defendant failed to pay him for services performed pursuant to the parties' contract. Defendant answered and counterclaimed, alleging breach of contract and Consumer Fraud Act (CFA), N.J.S.A. 56:8-1 to -233, violations. She claimed plaintiff did not complete the contracted work, made misrepresentations under the CFA, and failed to include necessary terms in the parties' contract.

On May 1, 2025, Judge Benjamin D. Morgan rendered a comprehensive oral decision. He dismissed defendant's breach of contract counterclaim, finding she failed to meet her burden of proving "plaintiff provided poor quality workmanship or did not satisfy [the contract's] scope of work." The judge reasoned defendant's photographs, taken mid-project during the summer of 2022, did not cover the full scope of plaintiff's work, and she provided no photos from when she terminated his services in April 2023, which she "could have easily . . . done." He gave "little weight" to the new contractor's testimony about the quality of plaintiff's work, reasoning he was not a licensed contractor, had no contracting business, did not testify about his contracting experience or qualifications, and offered only biased, unsupported opinions.

The judge found plaintiff proved he substantially completed the contracted work, leaving only $3,000 worth of touch-ups remaining at the time

he was fired, and defendant's failure to pay him the contract's remaining balance constituted a breach. Although neither party presented photos of plaintiff's work from when he was terminated, the judge emphasized it was "crucial" and undisputed the insurance and mortgage companies had inspected and approved his work throughout the project before dispersing payments, which defendant had accepted "without reservation." The judge found no evidence defendant ever advised her insurance company to withhold payment due to plaintiff's incomplete or insufficient work.

Accordingly, the judge determined defendant owed plaintiff $90,280.20, deducting $3,000 for the unfinished touch-up work from the remaining $93,280.20 contract balance. He rejected defendant's claim the remaining work was worth $40,000—the amount she allegedly paid the subsequent contractor—because she provided no proof of that payment or any breakdown specifying how much was for correcting plaintiff's completed work versus the additional work the subsequent contractor performed beyond the contract's scope.

The judge also rejected defendant's argument plaintiff misrepresented the project's length and the quality of his work. Defendant's claim plaintiff completed inadequate work failed because she did not satisfy her burden of proof on the breach of contract claim. Likewise, the judge determined defendant

A-3422-24

failed to prove plaintiff promised to complete the project in three to six months, as her only proof was her own testimony, which plaintiff's testimony directly contradicted, and defendant was less credible than plaintiff. Indeed, the project involved repairing the home's entire interior during the COVID-19 pandemic, which caused widespread delays and supply chain disruptions, making it "objectively unreasonable" to expect completion in such a short time frame. The judge also found the signed contract did not promise plaintiff would complete the project within three to six months, noting if defendant's decision to hire plaintiff had been based on his alleged promise to do so, she would have required the agreement to include that promise.

The judge found plaintiff committed certain regulatory violations, including failing to provide his license registration number and a copy of his commercial general liability (CGL) certificate, pursuant to N.J.S.A. 56:8-151(a), and start/stop dates for the project, as required under N.J.A.C. 13:45A-16.2(12)(iv). He rejected plaintiff's argument the pandemic made it impossible to provide stop and start dates, reasoning he could have modified the stop date as needed.

However, the judge determined those violations did not cause defendant to suffer an ascertainable loss. He found the $40,000 defendant allegedly paid

the subsequent contractor was related to her claim plaintiff performed insufficient work and not plaintiff's regulatory violations, thus that payment did not constitute an ascertainable loss.

The judge also found defendant's claim she suffered a $20,000 loss in insurance money due to the project not being completed in 180 days was "simply not credible," as she provided no evidence from her insurer showing she was denied that sum or proof she advised plaintiff she would lose out on it if the project was not completed within that period. He also rejected defendant's argument she suffered an ascertainable loss from making both rent and mortgage payments during the year she was unable to return to her home, finding her inability to return home was due to pandemic-related delays and the nature of the project rather than plaintiff's regulatory violations. The judge also noted defendant failed to provide proof of those costs.

The judge further concluded plaintiff's regulatory violations did not cause defendant to incur attorneys' fees to defend against plaintiff's action or bring her own claims such that the fees constituted an ascertainable loss; rather those fees resulted from her decision not to pay plaintiff the remaining contract balance. However, he found defendant was entitled to reasonable attorneys' fees related to her CFA claims, given the statute mandates such an award for any violations.

Accordingly, the judge ordered defendant to submit a certificate of services related to those claims.

The judge also determined plaintiff's CFA violations did not bar him from recovering on his breach of contract claim because "there [wa]s no dispute as to the work authorized to be done and the agreed upon price." Plaintiff's failure to include his license number and CGL certificate had no impact on the claim, and his failure to include stop or start dates in the contract did not delay the project's completion, but rather, the interceding pandemic did. The judge noted, "it would be highly unfair to deny plaintiff an affirmative right to recover on the contract because of inadvertent violations." Accordingly, even if plaintiff's CFA violations barred his right to enforce the contract, the judge alternatively found plaintiff could recover the $90,280.20 under his unjust enrichment claim, as he provided services to defendant valued at $214,000—confirmed by the insurance and bank inspections—that she retained the benefit of without justification, resulting in an unfair windfall if she were not required to pay him.

The judge issued a supplemental decision explaining defendant could not recover attorneys' fees because she failed to demonstrate what fees she was entitled to under the CFA. On May 27, 2025, he entered judgment in favor of plaintiff and against defendant in the amount of $90,280.20.

Defendant subsequently moved for a new trial and to stay the judgment. The judge denied both motions.[1]

## II.

Defendant argues on appeal the trial judge erred by granting plaintiff summary judgment because he breached the contract by not complying with state law and the Uniform Construction Code. She asserts the evidence produced at trial proves plaintiff breached the contract because he did not submit the required building, plumbing, electrical, and fire permits to the township, and the documents he submitted as receipts for the permits were merely quotes.

Defendant further maintains plaintiff did not fully complete the heating and air conditioning installation, neglected the plumbing and front door repairs, failed to remove trash from the property, did not install sheetrock or insulation in the attic, and unprofessionally installed the bathroom tiles. She asserts plaintiff's alleged "extra work" was actually part of the contracted repairs because it was related to restoring the fire damage, and his claim the pandemic delayed the project's completion is inaccurate because there was no longer an indoor mask mandate as of May 2021.

---

[1] Those orders are not before us on appeal.

A-3422-24

Defendant claims she did not receive the full insurance reimbursement because plaintiff failed to complete the project within 180 days, and she could not release plaintiff's final payment because certain issues remained before the mortgage company could inspect the home and authorize that payment. Defendant also contends—for the first time on appeal—the trial judge erred in granting summary judgment because plaintiff submitted an electrical permit to the township containing her forged signature, which she asserts invalidates the permit and any township approvals based on it, and voids the contract.

"Our review of a judgment following a bench trial is limited." Accounteks.Net, Inc. v. CKR L., LLP, 475 N.J. Super. 493, 503 (App. Div. 2023). A trial court's findings of fact "are binding on appeal when supported by adequate, substantial, credible evidence." Cesare v. Cesare, 154 N.J. 394, 411-12 (1998). "Because a trial court '"hears the case, sees and observes the witnesses, [and] hears them testify," it has a better perspective than a reviewing court in evaluating the veracity of witnesses.'" Id. at 412 (alteration in original) (quoting Pascale v. Pascale, 113 N.J. 20, 33 (1988)).

Questions of law, however, are reviewed de novo. See Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995). The same is true for issues of contract interpretation; we "pay no special deference to the trial

court's interpretation and look at the contract with fresh eyes." Kieffer v. Best Buy, 205 N.J. 213, 222-23 (2011).

Following our review of the record and the applicable legal principles, we affirm substantially for the reasons set forth in Judge Morgan's thorough and well-reasoned opinion.[2] We add the following comments.

Initially, we note, contrary to defendant's arguments, the judge did not grant plaintiff summary judgment; rather, he conducted a bench trial and painstakingly made findings of facts and conclusions of law. The record contains ample evidence to support the judge's finding defendant failed to prove plaintiff breached the contract. See Cesare, 154 N.J. at 411-12.

The judge found defendant failed to prove plaintiff "provided poor quality workmanship or did not satisfy [the contract's] scope of work." The photographs defendant introduced were taken during the summer of 2022 and did not reflect plaintiff's work at the time she fired him in April 2023, nearly a year later, and she did not provide any photos showing the quality of plaintiff's work thereafter. Defendant also offered no evidence supporting her claim she paid the subsequent contractor $40,000 or how much of that amount was attributable to correcting

---

[2] We are mindful of plaintiff's contentions regarding the procedural deficiencies of defendant's appellate brief and appendix. However, because we affirm the trial judge's opinion, we need not address those issues.

or finishing plaintiff's work as opposed to conducting repairs beyond the contract's scope. The judge also found defendant's claim she suffered a $20,000 loss in insurance money because plaintiff did not complete the project within 180 days "simply not credible," given the lack of evidence presented.

Plaintiff also adduced four checks evidencing the $120,719.80 in partial payments he received from defendant between September 2021 and August 2022. The record shows defendant made these payments to plaintiff after her insurance company released the funds to her following its and the mortgage company's inspection and approval of plaintiff's work. Thus, the judge's finding was supported by the record because the insurance company would not have released those payments had it found plaintiff's work insufficient. Moreover, the judge did not err in concluding plaintiff was alternatively entitled to recover under his unjust enrichment claim, as defendant retained the benefits of plaintiff's services without just cause by withholding the final payment.

During the trial, defendant argued plaintiff failed to obtain permits during the project. Although she claims she submitted a letter from the township confirming her signature on the permit was forged and an affidavit demonstrating the discrepancies between her signature and the forged one, she did not present those documents at trial and instead only included them in her

appendix on appeal. We decline to consider documents not presented to the trial court. See R. 2:5-4(a).

Additionally, it is axiomatic we "will decline to consider questions or issues not properly presented to the trial court when an opportunity for such a presentation is available 'unless the questions so raised on appeal go to the jurisdiction of the trial court or concern matters of great public interest.'" Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234 (1973) (quoting Reynolds Offset Co. v. Summer, 58 N.J. Super. 542, 548 (App. Div. 1959)); see also J.K. v. N.J. State Parole Bd., 247 N.J. 120, 138 n.6 (2021). We do not address defendant's fraud argument because it neither implicates the trial court's jurisdiction nor concerns a matter of great public interest.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Hanley

Clerk of the Appellate Division

14